E-FILED
Tuesday, 29 August, 2006  10:50:02 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY UPCHURCH,

       Plaintiff,

                                         04-3196

GLEN PREWITT, SANDRA FUNK and
SUE REDSHAW,

       Defendants.

## Order

     This case is about the defendants' alleged refusal to allow the plaintiff, an inmate incarcerated in Western Illinois Correctional Center, to change his religious affiliation from Christian to African Hebrew Israelite.  A motion for summary judgment by defendants Funk and Redshaw is before the court.

### Summary Judgment Standard

     A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*;*Fed. R. Civ. P.56(c).  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837.  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

     In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).  The question is  " . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

**Undisputed Facts**

1.  The events all occurred at Western Correctional Center, where the plaintiff is still incarcerated.

2.  In October, 2003, the plaintiff met with defendant Prewitt, the Chaplain at Western, and asked to change the religion listed on his identification card from Christian to Hebrew Israelite.  Prewitt denied the request.  (10/27/03 grievance, Def. Ex. A-2, d/e 22).

3.  On October 27, 2003, the plaintiff filed a grievance challenging Prewitt's decision, asking again to change his stated religion to Hebrew Israelite.  *Id.*

4.  The counselor's response to the grievance states:

Chaplain Prewitt states he spoke to you on 10/21/03.  You stated to him that you are now a Christian, of the Apostolic faith.  You also stated that if "House of Yahweh" services were offered, you would not attend.  You stated you grew up in the "House of Yahweh" religion and did not realize there is no similarity between "House of Yahweh" & Hebrew religion.  *Id.*

5.  Defendant Redshaw, the grievance officer, repeated the counselor's response and recommended denial of the plaintiff's grievance, for the stated reason that "staff follow[ed] established institutional policy and procedures as it relates to inmate's religion."  (Def. Ex. A-2).

6.  On December 15, 2003, the Administrative Review Board denied the plaintiff's appeal, repeating the counselor's findings and stating:

Per Department Rule 425.30(e) committed persons shall be requested to designate their religious affiliation during the orientation process.  Department Rule 425.30(h) stated that any committed person desiring to designate their religious affiliation after the orientation process or desiring to change their designated religious affiliation shall submit the written request to the facility chaplain.  The facility chaplain may refuse to change the affiliation if it is determined that the change is being requested for other than religious reasons.  The determination may be based, among other matters, on the frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration.  (Plaintiff's Ex. C).[1]

---

[1]Also potentially relevant is 20 Ill.Admin. Code 425.70, which requires an inmate seeking a religious diet to supply "written verification that the committed person is a member of a faith group that requires adherence to a particular diet and the specific requirements of the diet."

7.  The plaintiff wrote a letter to the Warden in December, 2003, denying that he had told Prewitt that he was a Christian.  The plaintiff wrote that he had worshipped as an African Hebrew Israelite before his incarceration, and only wished to continue to do so.  (Def. Ex. A-4).  He stated that Prewitt had referred to the plaintiff's request as a "step backward" from Christianity.  The plaintiff wrote, "I feel like I'm being forced to be a Christian."  He asked again that his identification read "African Hebrew Israelite" and that he be put on the "Hebrew Israelite Services."  *Id.*

8.  A memo dated February 10, 2004, from Defendant Funk to the plaintiff states:

I am in receipt of you letter to Warden Winters with regard to changing your religion.

Be advised that records do show that you filed a grievance here at Western, which was denied.  You forwarded your grievance to the ARB, where said grievance was denied also.  It appears you have exhausted all of your avenues to change your religion to African Hebrew Israelite, unless you can provide documented proof that you are a member of that religion.  (Def. Ex. A-3).

9.  Defendant Prewitt, the Chaplain, died on November 21, 2004.

### Analysis

#### I.  Denial of the Plaintiff's Request to Change Religion

An inmate is entitled to practice his religion "insofar as doing so does not unduly burden the administration of the prison."  *Hunafa v. Murphy*, 907  F.2d  46, 47 (7th Cir. 1990).  A rule impinging on that right "is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S.78, 89, 107 S.Ct. 2254, 2261 (1987).  Additionally, the Religious Land Use and Institutionalized Persons Act provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - -(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. Section 2000cc-1(a).

Defendants argue that, since Prewitt purportedly said that the plaintiff admitted to being a Christian, the plaintiff *is* a Christian.  Even ignoring that Prewitt is dead and that this observation comes from a second-hand hearsay account in a grievance, the plaintiff's religion is a disputed question of fact.  The plaintiff says he is African Hebrew Israelite, and that his identification card incorrectly pegged him as a Christian from the start.

Also disputed is Prewitt's motivation for denying the change. The defendants appear to assert that Prewitt denied the change because he believed the plaintiff was insincere. The plaintiff argues that Prewitt denied the change because Prewitt wanted the plaintiff to remain a Christian, and not "step backward."

Defendants further argue, without supporting affidavits, that restricting an inmate's ability to change his religion is supported by legitimate interests in security and prison administration. Generalized argument is not sufficient on summary judgment. The court can imagine that valid interests do exist *generally* to support rules governing religious affiliation changes. For example, prison officials may legitimately deny a change if they determine an inmate's professed religious beliefs are insincere. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005)( "Prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic. Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity.")(citations ommitted). However, that does not mean that a prison's determination of insincerity is unassailable, particularly if the proof of sincerity required by officials is an impossibly high burden. In short, the record is too thin to apply the legal tests under the First Amendment or RLUIPA.

## II. Defendant Prewitt

The defendants filed a Notice of Suggestion of Death for Prewitt on September 19, 2005. The plaintiff did not move for substitution. Accordingly, defendant Prewitt is dismissed in his individual capacity pursuant to Fed. R. Civ. P. 25(a)(1)("Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.").

If Prewitt is also being sued in his official capacity for injunctive relief,[2] that claim is against the State of Illinois and arguably survives Prewitt's death. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001); *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir. 1987). The Eleventh Amendment bars damage awards against states, but not awards of injunctive or declaratory relief "requiring a state official to conform his or her behavior to the requirements of federal law in the future." *Hadi v. Horn*, 830 F.3d at 783. The plaintiff does seek injunctive relief in his Complaint–a vegan diet and the "garbs" of his religion. If he still seeks that relief, Prewitt

---

[2]The plaintiff cannot obtain money damages against state officials in their official capacities. The plaintiff also cannot obtain money to compensate him for his mental or emotional suffering, because he had no physical injury. 42 U.S.C. Section 1997e(e).

4

should remain in his official capacity (or Prewitt's successor-in-interest, Fed. R. Civ. P. 25(d)).[3]
At this point, Prewitt will remain in the case in his official capacity, until the record is clear on
what injunctive relief the plaintiff still seeks and whether it can be granted in the context of this
case.

## III. Defendant Redshaw

Redshaw argues that her only involvement was recommending denial of the plaintiff's
grievance on December 2, 2003. However, there is no affidavit from Redshaw explaining that
recommendation or setting forth her authority, if any, to effect a change of the plaintiff's
religious designation. Her denial does not say the decision is outside her province–it addresses
the merits.

According to the grievance, Redshaw relied on the counselor's representation, who in
turn purportedly relied on Prewitt's representation that the plaintiff admitted to being a Christian
and admitted that the "House of Yahweh" was not Hebrew. That explanation does not make
sense on its face. If the plaintiff was a Christian, why would he file a grievance asking that his
identification reflect his true religion, Hebrew Israelite? What does the House of Yahweh have
to do with anything? Redshaw may have reasonably relied on Prewitt's determination of
insincerity, or may have lacked authority over the decision, those conclusions would only be
educated guesses on the current record. *Cf. Aresaba v. Walker*, 04-CV-1009, 2006 WL 2361882
(Aug. 15, 2006) (a similar claim before this court in which summary judgment was granted to
some defendants on personal responsibility grounds, where detailed affidavits were
provided)(not reported in F.Supp.2d).

## III. Defendant Funk

The court also cannot rule out Funk's personal responsibility on the present record.
Funk's Answer states, "Defendants admit that Plaintiff sought relief from Defendant Funk, who
was the Assistant Warden at Western Illinois Corrections Center at that time, and that Defendant
Funk denied Plaintiff's request to change his religious affiliation on December 2, 2003." (d/e 19,
¶ 8). She does not explain how this Answer is consistent with her argument that she was not
involved in the denial. Nor is there any affidavit from Funk.

---

[3]What injunctive relief the plaintiff still seeks is not clear. His latest letter requests only a
transfer to a prison that has Hebrew services, which he believes is Stateville Correctional Center.
(d/e 29). That is not the sort of injunctive relief the court can grant–it would intrude too far into
the administration of prisons. *See* 18 U.S.C. Section 3626(a)(1)(A)(prospective relief must be
narrowly drawn and the least intrusive means of correcting a violation). In any event, a claim
that the services provided for his religion are inadequate is not a part of this case and must be
pursued separately.

It also appears that the Warden forwarded the plaintiff's letter to Funk, arguably delegating authority to Funk to deal with the plaintiff's request.  Funk responded, telling the plaintiff, "It appears you have exhausted all of your avenues to change your religion to African Hebrew Israelite, unless you can provide documented proof that you are a member of that religion."  (Def. Ex. A-3).  Funk does not explain this.  What kind of documentation was required?  Who made that rule?  Did Funk have the authority to override the rule or to override Prewitt's determination?  There are too many unanswered questions for summary judgment.  As to qualified immunity, that determination is premature as well on this undeveloped record.

IT IS THEREFORE ORDERED that:

1) Defendant Prewitt is dismissed in his individual capacity pursuant to Fed. R. Civ. P. 25(a)(1).  Prewitt remains in his official capacity to the extent the plaintiff seeks relief not barred by the Eleventh Amendment;

2) A conference is scheduled for September 12, 2006, at 9:30 a.m. by telephone conference.  The parties should be prepared to address:

   a) Whether the plaintiff's request for injunctive relief is moot;

   b) If the request for injunctive relief is not moot, the identity of Defendant Prewitt's successor-in-interest pursuant to Fed. R. Civ. P. 25(d),[4] and whether said successor will waive service and appear in this action.

3) The defendants' motion for summary judgment is denied (d/e 21).

4) A final pretrial conference is scheduled for March 8, 2007, at 1:30 p.m. by video conference.  The parties shall submit the proposed final pretrial order by March 1, 2007.  The proposed order shall include the names of all witnesses to be called, including:  (1) the name, prison number, and place of incarceration for each inmate to be called as a witness; and, (2) the names and addresses of any witnesses who are not incarcerated for whom the plaintiff seeks a trial subpoena.[5] The plaintiff must provide the witness fee and mileage fee to any witness he seeks to subpoena.  Fed. R. Civ. P. 45;

---

[4]The defendants identified William Twaddell as the temporary successor (d/e 20), but it is not clear if he remains in this position.

[5]The defendants are responsible for the initial preparation of the final pretrial order under Local Rule 16.3(I)(3).  *See Appendix 2* to Local Rules for a sample form. www.ilcd.uscourts.gov/local rules

5)      A jury trial is scheduled for March 14, 2007, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person.  Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference.  The Clerk is directed to issue appropriate process for said appearances.

Enter this 29th day of August, 2006.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE