UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY UPCHURCH,

    Plaintiff,

    04-3196

GLEN PREWITT, SANDRA FUNK and
SUE REDSHAW,

    Defendants.

### Order

    This only issue remaining in this case is whether Defendants Funk and Redshaw were personally responsible for Plaintiff's inability to practice his religion during his incarceration in Western Illinois Correctional Center in part of 2003.

    Plaintiff asserts he has always been African Hebrew Israelite, but that his identification card incorrectly listed him as Christian, which prevented him from practicing his true religion. Defendant Prewitt allegedly refused to allow Plaintiff to correct his religious designation, which precluded Plaintiff from practicing his true religion. However, Defendant Prewitt died November 21, 2004, and he was subsequently dismissed in both his individual and official capacities. *See* 8/29/06 Order and 9/21/06 text entry. Before the court is the motion for summary judgment by Defendants Funk and Redshaw, which is granted for the reasons below.

*Undisputed Facts*

    The Court adopts the undisputed facts set forth in its prior summary judgment order (d/e 30), which are set forth below to the extent necessary, along with additional undisputed facts taken from the motion before the court.

    1. In October, 2003, the plaintiff met with defendant Prewitt, then the Chaplain at Western, and asked to change the religion listed on his identification card from Christian to Hebrew Israelite. Prewitt denied the request.

    2. The plaintiff filed a grievance challenging Prewitt's decision, asking again to change his stated religion to Hebrew Israelite.

    3. The counselor's response to the grievance states:

Chaplain Prewitt states he spoke to you on 10/21/03. You stated to him that you are now a Christian, of the Apostolic faith. You also stated that if "House of Yahweh" services were offered, you would not attend. You stated you grew up in

the "House of Yahweh" religion and did not realize there is no similarity between "House of Yahweh" & Hebrew religion.

4. Defendant Redshaw, the grievance officer, repeated the counselor's response and recommended denial of the plaintiff's grievance, for the stated reason that "staff follow[ed] established institutional policy and procedures as it relates to inmate's religion."

5. On December 15, 2003, the Administrative Review Board denied the plaintiff's appeal, repeating the counselor's findings and stating:

> Per Department Rule 425.30(e) committed persons shall be requested to designate their religious affiliation during the orientation process. Department Rule 425.30(h) stated that any committed person desiring to designate their religious affiliation after the orientation process or desiring to change their designated religious affiliation shall submit the written request to the facility chaplain. The facility chaplain may refuse to change the affiliation if it is determined that the change is being requested for other than religious reasons. The determination may be based, among other matters, on the frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration.

6. The plaintiff wrote a letter to the Warden in December, 2003, denying that he had told Prewitt that he was a Christian. The plaintiff wrote that he had worshiped as an African Hebrew Israelite before his incarceration, and only wished to continue to do so. He stated that Prewitt had referred to the plaintiff's request as a "step backward" from Christianity. The plaintiff wrote, "I feel like I'm being forced to be a Christian." He asked again that his identification read "African Hebrew Israelite" and that he be put on the "Hebrew Israelite Services."

7. A memo dated February 10, 2004, from Defendant Funk to the plaintiff states:

> I am in receipt of your letter to Warden Winters with regard to changing your religion.
>
> Be advised that records do show that you filed a grievance here at Western, which was denied. You forwarded your grievance to the ARB, where said grievance was denied also. It appears you have exhausted all of your avenues to change your religion to African Hebrew Israelite, unless you can provide documented proof that you are a member of that religion.

8. Defendant Redshaw relied on the information contained the counselor's response to the grievance. (Redshaw Aff. ¶5).

9. As the grievance officer, Defendant Redshaw had no authority to grant the Plaintiff a change of religion. Defendant Redshaw could only make a recommendation to the Warden's office as to the merit of the grievance. (Redshaw Aff. ¶6).

10. Defendant Funk based her responses to the Plaintiff's letter on the information made available to her by Chaplain Prewitt and the responses to Mr. Upchurch's grievance. (Funk Aff. ¶ 9).

11. It was Defendant Funk's belief that there were legitimate doubts about the sincerity of Mr. Upchurch's desire to change his religion, based on her discussions with Chaplain Prewitt. (Funk Aff. ¶ 9, 13).

12. Defendant Funk relied on the opinion of Chaplain Prewitt in making her decision to deny the Plaintiff's grievance seeking a change of his religion. (Funk Aff. ¶12).

*Analysis*

Summary judgment was denied previously to Funk and Redshaw because they had not submitted their own affidavits, thus failing to make the necessary record to support their arguments that they were not personally responsible. They have now submitted their affidavits, which makes it clear on the record that they were not personally responsible for Plaintiff 's inability correct the religious designation on his identification card.

An individual is liable under § 1983 only if he or she was "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001), *citing Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Personal responsibility means participating directly in the constitutional violation or directing the unconstitutional conduct. A defendant may also be personally responsible if the "conduct occurred with his knowledge or consent." *Sanville*, 266 F.3d at 739, *citing Chavez*, 251 F.3d at 652. Defendants do not make the personal responsibility argument in their brief, but they raised the issue in their first motion for summary judgment, and their proposed undisputed facts in this motion also raise the issue.

According to Plaintiff's own allegations, it was Defendant Chaplain Prewitt who interviewed Plaintiff about his request to correct his religious designation. Prewitt allegedly grilled Plaintiff, asking why he wanted to "go backward," ultimately denying Plaintiff's request. (Complaint, pp. 4-5).

Administrative rules also point to Chaplain Prewitt for personal responsibility. 20 Ill.Admin. Code 425.30 provides:

> Committed persons desiring to designate their religious affiliation after the orientation process or to change their designated religious affiliation shall submit the written request to the facility chaplain. The facility chaplain may refuse to change the affiliation if it is determined that the change is being requested for other than religious reasons. This determination may be based, among other matters, on the frequency of changes or a pattern of changing religious affiliation prior to a particular faith group's scheduled holiday or celebration.

The Court understands that Plaintiff was not trying to "change" his religion, only to

correct the religion designated on his identification card.  Yet, it was still Chaplain Prewitt's authority to grant or deny that request.

Redshaw and Funk's only involvement was relying on Prewitt's authority and judgment regarding Plaintiff's request.  The Court realizes that Redshaw and Funk cannot testify to the truth of what Prewitt told them, but they can testify to their reliance on Prewitt.  Funk and Redshaw cannot be held liable for Chaplain Prewitt's abuse of his authority (assuming, arguendo, he did abuse that authority).  There is no evidence to suggest Funk and Redshaw had any knowledge that Prewitt's decision was improperly motivated.  Therefore, no reasonable inference arises that Funk and Redshaw knowingly condoned or allowed any unconstitutional conduct to continue.

Funk's memo does state that Plaintiff was required to submit documented proof of his religion, but her affidavit makes clear that she relied on Prewitt's assertion that this was "common practice."  (Funk Aff. ¶ 11).  Again, that assertion is not taken for its truth (that it was indeed common practice), but instead to show Funk's reliance thereon.  In any event, the purported policy of requiring an inmate to provide proof of his religion with outside documentation was Prewitt's policy as Chaplain,  not Funk's.  *See* 20 Ill.Admin. Code 425.30; Funk Aff. ¶¶ 11-13.  Prewitt is no longer a defendant in his individual or in his official capacity.

    IT IS THEREFORE ORDERED:

1)     The motion for summary judgment by Defendants Redshaw and Funk is granted [d/e 36].  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2)     If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

Enter this 23rd day of April 2007.

    s\Harold A. Baker
    _____
    HAROLD A. BAKER
    UNITED STATES DISTRICT JUDGE